No. 21,551.

ANNA V. CARSON and CHARLES SHERMAN, *Appellants*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee*.

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Train Violating Speed Ordinance—Death of Boy—Liability*. Rule followed that, in an action for damages against a railway company, the breach of a city speed ordinance cannot be considered as an element in establishing the railway company's negligence unless the damages are traceable to or aggravated by the violation of the ordinance.

2. SAME—*Juvenile Trespassers—Duty of Railroad*. A railway company ordinarily owes no duty to be on the outlook for juvenile trespassers who may be inclined to climb upon the freight cars of its moving trains, and it is not liable for injuries sustained by such juveniles in so doing.

3. SAME. Rule followed that a railway company's duty to a trespasser is merely to avoid injuring him willfully.

4. NEGLIGENCE — *Moving Train — Twelve-year-old Boy Climbing Car — Death—Contributory Negligence*. The facts and relevant circumstances adduced in evidence to sustain an action for damages against

a railway company for the death of a bright twelve-year-old boy tended to show that the boy climbed upon the fore truck of a freight car in a train moving from five to fifteen miles per hour through a city having an ordinance limiting train speed to seven miles per hour; that the boy's foot became fast in the truck, and that he fell off and was run over by the car wheels, and that he was dragged by the foot some 1,200 feet before the train was stopped; that the trainmen did not see the accident; that the enginemen did not see or did not respond promptly to the signals of a bystander to stop the train after the accident had occurred. The boy died of his injuries. *Held,* that this evidence did not establish negligence on the part of the railway company; that it did establish negligence on the part of the boy; and that a demurrer to the evidence was properly sustained.

Appeal from Finney district court; GEORGE J. DOWNER, judge. Opinion filed May 11, 1918. Affirmed.

*H. O. Trinkle,* of Garden City, for the appellants.

*William R. Smith,* of Topeka, *William Osmond,* of Great Bend, and *William Easton Hutchison,* of Garden City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiffs sued the defendant for the death of their twelve-year-old son who was killed at Garden City. Although no witness saw the main incidents of this accident, it seems that the boy must have climbed upon the side of a freight car, and that his foot had been caught, and that he had fallen off or had attempted to jump off. The car was part of a long freight train moving westward. When first seen, the boy's foot was caught in the angle of the iron frame which connects the set of wheels or truck at the front end of the freight car, and he was being dragged along the ground by the train. One of his legs had already been run over before the lad was discovered. The car to which the boy was caught was at some distance from the caboose, and at a still greater distance from the engine. When the train stopped, the boy was released from the car at about 1,200 feet west of a bloody place on the track, which indicated that a car wheel had there run over him. He died shortly afterwards. The engineer and conductor testified that the train was moving about five miles per hour. Another witness who saw the boy dragging from the car truck,

and who ran alongside and attempted to release the boy, said that he had to run at "about fifteen miles per hour" to keep up with the moving train. The boy was shown to have been a bright, healthy lad who helped his mother in her bakery business and delivered goods about town.

Defendant's demurrer to the plaintiff's evidence was sustained, and this is assigned as error.

Counsel for plaintiff say:

"On the demurrer to the evidence it must stand admitted that the instant that Kermit Sherman was caught by the train he was helpless and no longer charged with negligence; that the train was running fifteen miles per hour when the ordinance of said city limited its speed to not more than seven; that the head and rear brakemen were not in their proper positions on the train and if they did n't see Kermit Sherman when he was first caught by the train it was due to this fact; that the boy was dragged for 1,200 feet or four blocks in the principal part of the city; that the place where the accident occurred was frequented by trespassers and licensees; that the train could have been stopped in from 50 to 75 feet; that the train might have been stopped in time to have prevented his injuries had the brakemen been in their proper positions."

It is the law of this state that the only duty of a railway company to a trespasser is to refrain from willfully injuring him. (*A. T. & S. F. Rld. Co. v. Todd,* 54 Kan. 551, 558, 38 Pac. 804; *Railway Co. v. Prewitt,* 59 Kan. 734, 54 Pac. 1067; *Burgess v. Railway Co.,* 83 Kan. 497, 112 Pac. 103.)

In some jurisdictions a duty is imposed upon railway companies to keep a lookout for trespassers, where the presence is to be expected (see note in 8 L. R. A., n. s., 1069, *et seq.*), but that rule may be founded on local statutes, and the decisions so holding go no further than to impose such duty to look out for trespassers on the tracks; none of them suggests a duty on the railway company to watch out for such trespassers as may be inclined to climb upon the freight cars of its trains, either while such trains are standing or in motion. Even in congested switch yards, in this state, the railway's duty is merely to avoid willful injury to a trespasser. (*Malott v. Railroad Co.,* 99 Kan. 115, 160 Pac. 978.)

When discovered, the boy had already been run over by the trucks of the freight car, and his maimed body was being dragged by the train. The fact, if it be a fact, that the train was going fifteen miles an hour had nothing to do with the ac-

Carson v. Railway Co.

cident. (*Williams v. Electric Railroad Co.,* 102 Kan. 268, 170 Pac. 395.) Where the brakemen were stationed on the train is of no consequence, for no duty was imposed on them to keep an outlook that this boy did not attempt to climb on the freight car. The law does not require a railroad company to be on the alert against the invasion of a freight train by trespassers.

In *Hanley v. Railway Co.,* 61 Kan. 237, 59 Pac. 271, it was decided:

"Where a trespasser goes under a train and upon a brake of a car in an attempt to steal a ride, no duty of the railroad company arises in his favor until he is discovered by some one in charge of the train, nor can a recovery be had for injuries caused by falling from his perilous position unless the company was guilty of willful and wanton neglect of duty in not stopping the train and removing him after his peril was discovered." (syl. ¶ 2.)

In *Wilson v. Railway Co.,* 66 Kan. 183, 71 Pac. 282, it was held:

"1. As a general rule, a railroad company owes no duty to trespassers who jump on and off its moving trains for the purpose of stealing rides, except not recklessly or wantonly to injure them after their peril is discovered.

"2. An intelligent boy, twelve years of age, who was familiar with the running of railroad trains, and who knew and appreciated the danger of getting on and off a moving train, climbed upon a slow-moving train and was injured while getting down from one car and attempting to climb upon another. *Held,* that he was a conscious trespasser and responsible for his own negligence and injury.

"3. The fact that the plaintiff and other boys had previously jumped on and off the cars of the company, without remonstrance from the employees of the company, did not amount to an invitation from the company to plaintiff to hop on and off its moving trains thereafter, nor make the company liable for an injury resulting from such reckless conduct." (syl.)

In *A. T. & S. F. Rld. Co. v. Plaskett,* 47 Kan. 112, 26 Pac. 403, id. 27 Pac. 824, it was said:

"If it were the duty of the trainmen to keep a lookout to prevent thoughtless children from climbing on or under their train when crossing the public street at a slow rate or when momentarily stopping in a public street, before crossing another railroad, then the brakeman or trainmen, instead of being at their usual or proper places upon the cars to handle the brakes, give signals, etc., should be upon the ground, near by the several cars of the train, watching the cars or patrolling the ground around the cars, to prevent children and others from getting on or under them. . . .

"The only alleged negligence found by the jury was that the brakemen or trainmen were not at their proper places. Nothing else was found. If they had been at their usual or proper places on the cars for the operation of the train, they would not, in the performance of their usual or general duties, have been watching, or looking out to prevent children or others from climbing on or under the cars, when the train was in motion, or when it momentarily stopped." (p. 114.)

(See, also, *Tennis v. Rapid Transit Rly. Co.*, 45 Kan. 503, 508, 25 Pac. 876; *Mendenhall v. Railway Co.*, 66 Kan. 438, 71 Pac. 846; *Gamble v. Oil Co.*, 100 Kan. 74, 163 Pac. 627.)

There was no evidence that the train was not promptly stopped when once the boy's situation was discovered. The enginemen were under no duty to watch for and respond to signals given by a bystander or stranger running alongside the train, and there is no evidence that they saw or understood those signals.

There was no evidence of negligence on the part of the railway company; the negligence of the unfortunate boy was fully established by circumstances; and the judgment of the trial court cannot be disturbed.

Affirmed.